ELIZABETH TYNES, Administratrix, *vs.* A. P. GRIMSTEAD.

October Term, 1873.

AGENT WHO ACTS FOR HIMSELF IN THE MATTER OF THE AGENCY.—Whoever undertakes to act for another in any matter shall not, in the same matter, act for himself, and this without regard to the fact whether he has or has not made a profit by the act.

*R. S. Overall*, for complainant.

—— ——, for defendant.

THE' CHANCELLOR :—The bill is filed by the complainant, as administratrix of her deceased husband, to have a sale of the lands of said estate to the defendant, made by a decree of the county court for the payment of debts, set aside, upon the ground that the defendant occupied such a fiduciary relation towards her in the matter of said sale that the purchase was voidable at her instance. The sale was made on the 18th of March, 1871, and confirmed on the 28th of the same month. The bill was filed on the 25th of May thereafter.

The bill alleges in substance, that the complainant is unable to read or write, and was incompetent to transact the business of the administration of her husband's estate, "and did entrust the same to the defendant, and authorized him to attend to the administration of said estate for her;" that he attended to such business, and employed the counsel to draw up the petition to the county court for the sale of the land; and that " he was authorized and acted in all things concerning the sale of said land as her agent;" that he attended the sale for her, but bid off the land for himself at five dollars per acre, being much less than its value; that when she expressed her dissatisfaction with the sale, as she did the same day, he requested her to remain silent, and induced her to believe he might advance his bid, etc.

The bill waives the oath to the defendant's answer, and the answer need not be looked to except to the fact of its admission that complainant was incompetent to attend to the business of the estate, and that he did assist her. The de-

fendant has given his deposition, which is under oath. In this deposition he says that he declined the complainant's request to administer on her husband's estate, but told her " if she would administer herself I would give her any assistance I could, and did so." He admits that she did administer and called on him to aid her. He wrote her advertisement, etc., attended the sale of the personal property, and clerked for her, made out her accounts of sale. Then, when she wanted to sell the land to pay debts, he came with her to Nashville (or, as the deposition more guardedly puts it, " she came to Nashville the same day I did,") and attended to the suggestion of insolvency, and publication of notice. At her request, also, he spoke to a lawyer to file the petition of sale, and furnished him with the names of the parties. Neither the lawyer originally employed, nor the one to whom the business was afterwards turned over, knew Mrs. Tynes, and whatever was done by them, or the clerk of the court, seems to have been done, or attempted to be done through the defendant. The defendant in his deposition further admits that the complainant was not aware that the land was to be sold when it was until he told her; that he called by her house on the morning of the day of sale on his way to town, and asked her if she had found a purchaser; that he attended the sale and the land was bid off to him at $5 an acre, no person bidding against him; that he saw complainant on his return, and when he told her that he was the purchaser at the price mentioned, " she observed that would not pay the debts of the estate." " I answered," says the witness, " so far as that was concerned it did not matter with her whether it brought enough for that purpose or not. I also told her that the bid would be left open for any one else to advance on my bid. She said something about the time it would be held open; I told her I did not know, that I supposed would be left with the court, and I presumed it would not be in a hurry about it." On cross-examination, he admits that when he told complainant what he gave for the land, " and she expressed her dissatisfaction," he told

her the sale would remain open he did not know how long. He admits that he did not tell her in advance that he was going to buy the land, and that he bought it because it was a bargain at the price he gave, which amounted to about $300, and that he considered the property worth $800.

The defendant also introduced as a witness Mrs. Fanny A. Roper, his own daughter, who testifies that she was with her father, in his buggy, on the day of sale, when he had his interview with the complainant, both going to and returning from the sale. She says that, at the interview in the morning, her father told complainant the sale would take place that day, and asked if she was not coming to town. She replied that she was not, but asked him to buy the land.'' She does not recollect anything else said about the land, '' except that she (complainant) wanted it to bring enough to pay the debts.'' The witness gives what took place between complainant and defendant upon the return interview, after defendant told her the price at which he had bought, in these words: '' Why, Dr., that will not be enough to pay the debts, and he told her that that did not concern her, or touch her part of the land, and tried to explain to her why it did not. *And told her that he did not think the court would confirm the sale.*''

Upon the facts thus conceded, or proved by the defendant, it is clear that the sale cannot be permitted to stand. The admissions leave no doubt that, in whatever light the defendant may have considered himself as acting, the complainant believed, and had a right to believe, that he was acting for her. She was nominally the administratrix, but utterly incapable of doing anything without assistance, and she relied upon the defendant, who, in fact, did everything that was done. Under these circumstances, the purchase by him of any property of the estate was voidable at the instance of any of the parties interested. No principle is better settled, or founded upon a sounder basis of positive law or legal ethics, than that which declares that whoever undertakes to act for another, in any matter, shall not, in

the same matter, act for himself, and this without respect to the fact whether the party has or has not made a profit by the act. Equity disallows the measure upon general principles, without reference to advantages or unfairness. *Perkins* v. *McGavock*, 3 Hay. 265 ; *Fox* v. *Mackreth*, 3 Bro. C. C. 400 ; *Lacey, ex parte,* 6 Ves. 625 ; 1 Sto. Eq. Jur. § 322 ; Hill on Trustees, 536 ; *Davoue* v. *Fanning*, 2 J. Ch. 252 ; 1 Head. 251 ; 4 Cold. 513 ; *Hamilton* v. *Wright*, 9 Ch. & F. 111, 123 ; *Michoud* v. *Girod*, 4 How. 503.

What passed at the interview after the sale sufficiently accounts for the delay of the complainant in not taking some step before confirmation of the sale, to prevent such confirmation. She had a right to infer from what the defendant said, according to Mrs. Roper's account, that the sale would not be confirmed at all, and, even from the defendant's account, not for some indefinite time, nor without notice to her. The report of the clerk of the county court, moreover, shows that the defendant did not comply with the terms of the sale until after the report was confirmed, and this fact is persuasive that he did not consider the sale as final.

The sale must be set aside, and the property re-sold under the decrees of this court for the benefit of the creditors of the estate of complainant's intestate in the first instance, and then of the distributees. A lien will, however, be declared in favor of the defendant for the purchase-money paid by him at the county court sale, with interest, and for any taxes paid by him, subject to a deduction for the reasonable rent of the premises since he has been in possession, for which an account will be ordered. The surplus proceeds of the sale, after paying the balance due defendant, will be transmitted to the county court for administration under the original petition. The defendant will pay all costs to date.